795 P.2d 996
**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Travis L. McGUIRE,
Defendant–Appellant.**

**No. 17854.**

Supreme Court of New Mexico.

June 28, 1990.

ciary, and we express no opinion on this issue because of the procedural posture in which this case has arrived before us.

Jacquelyn Robins, Chief Public Defender, Susan Gibbs, Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Margaret B. Alcock, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

RANSOM, Justice.

Travis McGuire was convicted of first-degree kidnapping, second-degree criminal sexual penetration, and willful and deliberate first-degree murder in connection with the disappearance of Jena Marie Repp from Albuquerque on December 6, 1985. The jury imposed a life sentence for the capital offense, despite finding the existence of two aggravating circumstances: that the murder took place during the course of a kidnapping, and that it was motivated by an intent to eliminate a witness. Additionally, the trial court imposed the basic sentences for the collateral, noncapital convic-

tions of tampering with evidence, contributing to the delinquency of a minor, and unlawful taking of a motor vehicle, as well as the maximum, aggravated sentences for kidnapping, criminal sexual penetration, and robbery. The court ordered the sentences to be served consecutively. In his appeal, McGuire argues:

1. Imposition of consecutive sentences for first-degree kidnapping and second-degree criminal sexual penetration violated his right to be free from double jeopardy in the form of multiple punishments for the same offense.

2. His sentences for kidnapping, criminal sexual penetration, and robbery must be set aside because the trial court failed to state its reasons on the record for increasing the basic sentences for these crimes.

3. Denial of his motion for change of venue and his challenges of certain jurors for cause deprived him of a fair trial and impartial jury, given the extensive and prejudicial pretrial publicity in this case.

4. Denial of his motion for sanctions or a continuance, and the misconduct of the police and prosecution, deprived him of a fair trial.

5. Failure to instruct the jury as requested and admission of certain evidence require reversal and a new trial.

As discussed below, we affirm in part and reverse in part and remand with instructions.

Jena Marie Repp disappeared after leaving her job in Albuquerque on Friday evening, December 6. Several days later, a search instituted at the request of her worried son recovered Ms. Repp's purse, jeans, and underwear on a frontage road off of I-40 near Moriarty, New Mexico. The search was otherwise unsuccessful.

In May 1986 Kentucky authorities arrested defendant after receiving a tip that he was in possession of two stolen vehicles, one of which was Ms. Repp's 1986 blue Ford Escort. Subsequent to defendant's arrest, his step-brother Ricky Martin surrendered himself to the police in Oklahoma City. Martin entered into a plea bargain

with the State of New Mexico, under which he agreed to testify against defendant and to lead authorities to Ms. Repp's remains in return for prosecution on reduced charges. Martin pleaded guilty to these charges. Although somewhat different from his previous statements, Martin's testimony at trial was the linchpin of the prosecution's case. Also testifying against defendant at trial were several people he knew in Kentucky, including a woman named Kay Rader. A half-brother, Gary Martin, also testified. The testimony of these witnesses generally tended to corroborate Ricky Martin's testimony.

According to Ricky Martin's testimony, he and defendant had decided to leave Albuquerque after working there for several months. They decided to steal a car in order to get to Oklahoma City. Sometime after 6 p.m. on Friday, December 6, after cashing their last paycheck, Martin and defendant returned to the apartment complex where they lived. Repp also lived at this apartment complex. Defendant, according to Martin's testimony, walked up to Repp as she was sitting in her car outside the apartments and forced his way into the car. He pulled Ms. Repp from the front seat, slapped her, and forced her into the back. Defendant, Martin testified, then climbed in on top of his victim and told his brother to drive. As they proceeded East on I-40, defendant bound Repp's hands and feet and gagged her mouth with duct tape. He then raped her.

After pulling some money from her purse, defendant and Martin discarded it, along with her jeans and underwear, near Moriarty. When they had driven some distance further east, defendant told Martin to pull off onto a dirt road. When they stopped, defendant took his victim for a walk away from the car into the woods. Martin testified that defendant strangled Repp with Martin's belt and left her body under a tree.

■ *Consecutive sentences for kidnapping and criminal sexual penetration did not violate double jeopardy prohibition against multiple punishments for the same offense.* The double jeopardy

provisions of both the state and federal constitutions protect against multiple punishments for the same offense contrary to legislative intent. U.S. Const. amend. V; N.M. Const. art. II, § 15; *see generally Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) (under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), courts should presume that the legislature did not intend pyramiding punishments for the same act absent clear indication to the contrary); *State v. Christopher Pierce*, 110 N.M. 76, 792 P.2d 408 (1990) (same). As an aspect of this general principle, courts may not impose punishment for both the greater and lesser included offenses absent a clear expression of legislative intent. *Id.* at 86, 792 P.2d at 418; *United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1582 (9th Cir.1989).

The pertinent provisions of NMSA 1978, Section 30–4–1 (Repl.Pamp.1984) declare that "[k]idnapping is the unlawful taking, restraining or confining of a person, by force * * * with intent that the victim * * * be held for services against [her] will." Section 30–9–11 defines criminal sexual penetration to include "the unlawful and intentional causing of a person, other than one's spouse, to engage in sexual intercourse * * *." Subsection 30–9–11(B)(4) provides that one who commits criminal sexual penetration during "the commission of any other felony" has committed a second-degree felony, while Subsection (C) provides that one who commits criminal sexual penetration "through the use of force or coercion" has committed a third-degree felony.

As counsel for defendant noted at oral argument, our kidnapping statute differs from the common-law offense in that the statute does not require asportation of the victim. Given the statutory definitions, it is possible that nearly every act of criminal sexual penetration also will constitute the act of kidnapping. *See State v. Henderson*, 109 N.M. 655, 661, 789 P.2d 603, 609 (1990). Indeed, in this case the jury was instructed, pursuant to the kidnapping charge, that to " '[h]old for service' includes holding for sexual purposes."

In this case, moreover, the felony used to raise criminal sexual penetration to a second-degree felony was the kidnapping itself. Defendant contends the state's charging pattern violates double jeopardy because the same acts are being used to establish both kidnapping and criminal sexual penetration and are being used yet a third time to raise the latter crime to a second-degree felony.

The state agrees that, when the facts used to establish the elements of each offense are identical, imposition of multiple punishment for violation of the kidnapping and criminal sexual penetration statutes is problematic under existing case law. *See State v. Tsethlikai*, 109 N.M. 371, 785 P.2d 282 (Ct.App.1989), *cert. denied*, 109 N.M. 262, 784 P.2d 1005 (1990); *State v. Corneau*, 109 N.M. 81, 781 P.2d 1159 (Ct.App.), *cert. denied*, 108 N.M. 668, 777 P.2d 907 (1989); *State v. Singleton*, 102 N.M. 66, 691 P.2d ·67 (Ct.App.1984). The issue on which the state and defendant differ is whether the state relied on identical facts to convict defendant of both offenses in this case. At oral argument, counsel for defendant contended the record did not contain substantial evidence to prove a kidnapping had taken place until the time at which McGuire committed criminal sexual penetration. Until this act took place, it is contended, there was no evidence of an intent to hold the victim for services against her will. Therefore, it is argued, identical facts support both charges. (An act of restraining another does not constitute kidnapping without intent to hold for services—or for ransom or as a hostage. *See* § 30–4–1.)

We disagree. Defendant confuses the use of the same facts to prove *successive* offenses that depend on *separate* conduct with the use of the same facts to prove *concurrent* offenses that depend on the *same* conduct. Here, substantial evidence was presented to show a deliberate course of action by defendant from the time he abducted his victim until the time he strangled her. Defendant cites no cases that hold the jury cannot infer, from evidence of acts committed at some later point during

the commission of a kidnapping, that the necessary criminal intent existed at the time the victim first was restrained. Viewed in this manner, the evidence provides substantial support for an inference that defendant intended to commit criminal sexual penetration from the moment of the abduction. Once defendant restrained the victim with the requisite intent to hold her for service against her will, he had committed the crime of kidnapping, although the kidnapping continued throughout the course of defendant's other crimes and until the time of the victim's death. *See State v. Hutchinson,* 99 N.M. 616, 661 P.2d 1315 (1983) (kidnapping is a continuing offense); *Corneau,* 109 N.M. at 86–87, 781 P.2d at 1164–65 (false imprisonment is a continuing offense, while the offense of criminal sexual penetration is completed upon penetration).

■ Further, criminal sexual penetration is not a lesser included offense of kidnapping under the facts of this case and defendant's conviction of both kidnapping and criminal sexual penetration does not violate double jeopardy on that basis either. *See State v. DeMary,* 99 N.M. 177, 655 P.2d 1021 (1982) (whether one crime is a lesser included offense of another must be determined in light of both the specific elements of the two crimes and the facts of the case, and one crime is included in another if the defendant could not have committed the greater offense without also committing the lesser).

■ In so holding, we note that *Tsethlikai* expressly reserved judgment on whether "merger" should apply when "the kidnapping was used to enhance the charge of criminal sexual penetration while evidence of the criminal sexual penetration was used to prove the intent necessary to enhance the false imprisonment into kidnapping."

109 N.M. at 374, 785 P.2d at 285. As discussed above, it well may be that the jury in this case inferred the existence of the intent necessary to establish the kidnapping at the time the victim first was restrained from the facts surrounding the later sexual assault. We do not believe, however, that this necessitated "merger" of the guilty verdicts. Under *DeMary,* double jeopardy does not depend simply on whether the fact finder must refer to a common body of evidence in arriving at a verdict. Rather, proof of the commission of one crime by evidence that proves commission of another may constitute double jeopardy only when, given the elements of each crime, the one crime could not have been committed without the commission of the other. 99 N.M. at 179, 655 P.2d at 1023; *see also State v. Jacobs,* 102 N.M. 801, 804, 701 P.2d 400, 403 (Ct.App.1985). *Cf. Christopher Pierce,* 110 N.M. at 87, 792 P.2d at 419 (double jeopardy principles applied when multiple continuing offenses charged).

Here, the operative fact to be inferred from the sexual assault as it related to the kidnapping charge was the intent of defendant when his victim first was subjected to restraint.[1] By contrast, the intent required to prove criminal sexual penetration was a general criminal intent existing at the time of the sexual assault to cause the victim to engage in sexual intercourse. *See* § 30–9–11. We conclude substantial evidence was presented from which the jury could find independent factual bases for its guilty verdict on each of these counts; therefore, under *DeMary,* the second-degree criminal sexual penetration is not an included offense of the kidnapping. *Cf. Grady v. Corbin,* —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) (double jeopar-

---

**1.** Conversely, defendant had the opportunity to rebut any inference of the existence of such a motive. For example, as suggested by defendant's appellate counsel in another context, the facts here support an inference that defendant restrained the victim simply in order to prevent her from reporting the theft of the automobile, and that he formed an intent to commit criminal sexual penetration only later. Under such a view of the facts, defendant would at most have been guilty of false imprisonment, not kidnapping. As discussed in the body of this opinion, the trial court did instruct the jury on false imprisonment as a lesser included offense to kidnapping. We also note that evidence of defendant's actions at the time of the abduction, even if not sufficient standing alone, nevertheless was relevant to prove his intent to hold the victim for services.

dy clause prohibits subsequent prosecution when government, in order to prove an element of the offense charged, must prove conduct constituting an offense for which defendant previously was prosecuted; however, the critical inquiry involves the conduct to be proven, not the evidence used to prove it).

▇ Nor does the fact that the kidnapping charge was used to raise the criminal sexual penetration to a second-degree felony pose a double jeopardy problem in this case. Convictions normally are allowed for both predicate and compound offenses, and our courts have held that criminal sexual penetration statutes and kidnapping statutes protect different social norms. *See Corneau,* 109 N.M. at 86, 781 P.2d at 1164 (false imprisonment could be used to raise criminal sexual penetration to a second-degree felony when evidence supported a finding of false imprisonment separate from the false imprisonment necessarily involved in almost every act of criminal sexual penetration); *Tsethlikai,* 109 N.M. at 373–74, 785 P.2d at 284–85 (consecutive sentences ordinarily are permitted for both compound and predicate offenses, and were permissible as to the defendant because second-degree criminal sexual penetration and kidnapping address different social norms) (citing *People v. Robideau,* 419 Mich. 458, 487, 355 N.W.2d 592, 604 (1984)). We do not believe the legislature intended to excuse conviction of the predicate felony of a kidnapping separate from the criminal sexual penetration when it established the compound offense of second-degree criminal sexual penetration.

▇ *Record of trial court's reasons for increasing basic sentences on kidnapping, second-degree criminal sexual penetration, and robbery charges insufficient to establish that court possessed permissible basis for increasing sentences.* The court increased defendant's basic sentences on three counts based on NMSA 1978, Section 31–18–15.1 (Repl.Pamp.1987), which provides that the trial court may alter a

convicted defendant's basic sentence by up to one third of its length if, after a hearing, the court finds any aggravating or mitigating circumstances. The statute also provides that the court shall issue a brief statement of the reasons for altering the sentence and shall incorporate that statement into the record of the case. Failure to do so requires reversal and remand for resentencing. *See State v. Segotta,* 100 N.M. 498, 501, 672 P.2d 1129, 1132 (1983); *State v. James,* 109 N.M. 278, 784 P.2d 1021 (Ct.App.), *cert. denied,* 109 N.M. 262, 784 P.2d 1005 (1989); *State v. Bernal,* 106 N.M. 117, 739 P.2d 986 (Ct.App.), *cert. denied,* 106 N.M. 81, 738 P.2d 1326 (1987).

Here, the trial court found the existence of aggravating circumstances, but did not specify what those circumstances were. The state argues that we may infer the court relied on one or more of the reasons presented by the prosecution at the sentencing hearing. The prosecution argued that the court could increase defendant's sentences based on the jury's findings of statutory aggravating circumstances during the capital sentencing phase of the proceedings, on the "coldbloodedness" of the crimes and their tragic result, and on the fact that defendant coerced a minor into participating in the crimes.[2]

We disagree that the record in this case allows us to assume the trial court rested its decision to increase defendant's basic sentences on one of the three reasons advanced by the state, and not on some other reason. The record reflects that, following argument from counsel and an extended statement by the son of the deceased, the trial court stated it "found aggravating circumstances present" as to each of the counts in question. The court did not intimate whether it was relying on one of the three circumstances suggested by the state, on the testimony of the son, or on some other fact or circumstance.

Defendant does not allege a fourth, specific, impermissible reason tainted the trial court's decision; however, it is the trial

---

**2.** The state specifically requested that the court, should it choose to increase the basic sentence for contributing to the delinquency of a minor, rely on some basis other than the essential involvement of the minor brother, as this presented double jeopardy problems.

court's lack of articulation itself which prevents defendant from arguing that, and precludes us from deciding whether, such a reason existed. *Cf. State v. James,* 109 N.M. at 284, 784 P.2d at 1027 (when trial court's statement of its reasons for increasing defendant's basic sentence did not allow appellate court to determine whether decision rested on permissible basis, remand for resentencing was required). We believe it would eviscerate the requirements of Section 31–18–15.1 to conclude without additional support from the record that the trial court relied on one or more of the reasons suggested by the prosecution to the exclusion of other, impermissible reasons when it increased defendant's basic sentences. *Cf. Bernal,* 106 N.M. at 119, 739 P.2d at 988 (reversal not required when transcript included trial court's statement of reasons for altering defendant's sentence).

■ Foreclosure of an avenue of appeal due to an inadequate record may, under certain circumstances, give rise to a presumption of prejudice, as may denial of a statutorily created procedural right. *See Manlove v. Sullivan,* 108 N.M. 471, 476–77, 775 P.2d 237, 242–43 (1989) (allegation of intentional alteration of the record); *State v. Moore,* 87 N.M. 412, 534 P.2d 1124 (Ct.App.1975) (transcript unavailable through no fault of appellant); *State v. Spearman,* 84 N.M. 366, 503 P.2d 649 (Ct. App.1972) (denial of statutory right to instruction on failure of accused to testify). Here, the court failed to comply with the requirements of the sentencing statute, and the record fails to establish that the court's omission was harmless. We therefore reverse the court's imposition of sentence on these three counts.

■ *Trial court did not abuse discretion—in denying motion for a change of venue or motions to excuse jurors for cause.* Defendant timely moved for a change of venue prior to jury selection and presented extensive evidence of the publicity that had attended the disappearance of the victim, the subsequent arrest of defendant, and the discovery of the victim's remains. The trial court denied this motion

and entered an order on February 23, 1988, which provided:

THE COURT having taken judicial notice of the press coverage in this cause, as well as the intense press coverage in other "high profile" cases which has necessitated the burden and public expense of transferring the trial to another venue, and the Court noting that trial is scheduled to commence in the near future;

IT IS ORDERED that, except by leave of Court, Counsel and all persons under their direction or control refrain from making public statements or statements for publication directly or indirectly concerning this cause.

At the close of voir dire, during which many panel members acknowledged some familiarity with the events in question, defendant renewed his motion for a change of venue, which was denied. Defendant argues that the trial court abused its discretion. *See State v. Hovey,* 106 N.M. 300, 742 P.2d 512 (1987). We disagree.

First, we agree with the state that the trial court's reference to the necessity of transferring trial to another venue in his February 23 order referred to "other" high profile cases, not to the present one. This interpretation is entirely consistent with the Court's restriction on public pronouncements by participants in the trial. Second, we do not agree that exposure of venire members to publicity itself establishes prejudice or a presumption of prejudice. *See Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). Rather, the pertinent inquiry is whether "the jurors * * * had such fixed opinions that they could not judge impartially the guilt of the defendant * * *." *Id.* at 1035, 104 S.Ct. at 2891. In this case, based on the results of voir dire, the trial court determined that the pretrial publicity had not made it impossible to select a constitutionally impartial jury. Defendant has not established that this determination amounted to an abuse of discretion.

■ For similar reasons, we hold that the trial court did not abuse its discretion in refusing to dismiss six jurors for cause.

*See State v. Sutphin,* 107 N.M. 126, 753 P.2d 1314 (1988). Five of the six jurors were women of approximately the same age as the victim. Several of these individuals acknowledged some familiarity with the facts surrounding the case, one stated that she had fears about her own safety because she lived alone, and one juror apparently associated the events in this case with another recent and notorious murder. All proclaimed that they could be impartial. The sixth juror was a man who admitted to a "leaning" towards finding defendant guilty based on pretrial publicity, but who denied having any substantial doubt as to his ability to decide the case solely on the basis of the evidence presented and the instructions of the court. Absent manifest abuse of discretion, we will not disturb a trial court's determination of questions of juror bias. *State v. Darci Pierce,* 109 N.M. 596, 788 P.2d 352 (1990). On the basis of this evidence, the court did not abuse its discretion when it concluded that the jurors could "lay aside * * * impression[s] or opinion[s] and render a verdict based on the evidence." *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *see also Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

■ *—in denying motions for second continuance or sanctions against the state.* Following selection of the jury, defendant moved for a continuance based on the late disclosure by police of several taped interviews of participants in the trial by police in Kentucky and Oklahoma. This information also had not been disclosed to the prosecution. The trial court, noting the difficulty in tracking the development of a case over several states, found that the late disclosure by police officers was inadvertent, not intentional. The court directed the prosecution to provide defense counsel with a transcript of the tapes and ordered a one week continuance.

After the one week continuance, defense counsel renewed his motion for a continuance, or, in the alternative, for sanctions against the state in the form of dismissal of the case or suppression of the evidence. The court noted that "almost the exclusive use" of the new evidence was as possible impeachment material, and that defense counsel had been given adequate time to review the transcripts. The court also found dismissal of the charges to be an inappropriate sanction under the circumstances, and withheld ruling on the motion to suppress pending some attempt to use the information in question at trial. Defendant does not dispute that the only attempt to use this evidence occurred when the prosecution attempted to introduce the recorded testimony of Kay Rader, and that her recorded testimony was not admitted. Defendant has failed to demonstrate that he was prejudiced or that the trial court abused its discretion in its rulings; we conclude the court did not err. *See March v. State,* 105 N.M. 453, 455, 734 P.2d 231, 233 (1987).

■ *Prosecutor's improper cross-examination did not deprive defendant of a fair trial; no fundamental error in prosecutor's closing argument.* Defendant contends he was deprived of a fair trial by the prosecutor's improper, argumentative cross-examination. On direct examination, in the context of explaining statements he had made to other witness concerning his involvement in Repp's death, defendant testified that he had learned "to put the bluff over on people" to protect himself while incarcerated on a previous auto theft conviction and as a part of his life "out in the streets." On cross-examination, the prosecutor asked defendant whether "what you just did [testifying] in the last forty minutes or so is the biggest bluff of your life that you have ever tried to put over on anyone?" The court sustained defense counsel's objection to the question, and twice more admonished the prosecutor to stop using argumentative questions. After the jury had recessed for the night, the court renewed its admonishment of the prosecutor in chambers.

The following day, however, referring to a letter in which defendant had referred to the police and district attorney as "these stupid people," the prosecutor asked McGuire, "[A]fter your testimony yesterday, might you be referring to the jury?"

Defense counsel again objected and then moved for a mistrial. The court denied the motion, but, at a bench conference, declared the prosecutor to be in contempt of court and fined him $250. The court then admonished the jury to disregard counsel's comments in their entirety. We do not believe these remarks deprived defendant of a fair trial. There has been no showing that the trial court's prompt sustaining of objections and admonishments to the jury failed to cure the effect of the prosecutor's overreaching. *See State v. Simonson,* 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983) (general rule is that sustaining of objections and admonishments to jury cure prejudicial impact of improper question); *see also State v. Ferguson,* 77 N.M. 441, 423 P.2d 872 (1967) (admonishment to disregard evidence that defendant was subject of unrelated criminal investigation served to cure prejudice resulting from police officer's testimony). *Cf. State v. Rowell,* 77 N.M. 124, 419 P.2d 966 (1966) (admonishment to jury insufficient to cure prejudice stemming from question concerning whether witness was aware of defendant's prior criminal convictions for same offense; question was improper, unrelated to any issue in trial, and asked in a manner calculated to create prejudice).

█ Defendant also alleges fundamental error arising from the cumulative effect of the police failure to disclose evidence, the prosecutor's improper cross-examination, and certain remarks during closing argument (to which no objection was made). *See State v. Jaramillo,* 85 N.M. 19, 508 P.2d 1316 (Ct.App.) (fundamental error doctrine allows court to reach questions which were not properly preserved for appeal in order to prevent miscarriage of justice when defendant has been deprived of rights essential to the defense), *cert. denied,* 85 N.M. 5, 508 P.2d 1302, 414 U.S. 1000, 94 S.Ct. 353, 38 L.Ed.2d 236 (1973). Given the substantial evidence presented by the prosecution, and the trial court's findings and actions with regard to alleged police and prosecutorial misconduct, we do not believe any impropriety in the prosecution's closing argument gave rise to fundamental error.

█ *Trial court not shown to have erred in refusing to instruct jury on lesser included offenses or admission of certain evidence.* Defendant claims that the court erred in not instructing the jury on lesser included offenses to murder and kidnapping, and in not giving an alibi instruction. *See State v. Benavidez,* 94 N.M. 706, 616 P.2d 419 (1980) (defendant entitled to instruction on all lesser included offenses supported by substantial evidence). Defendant acknowledges that the trial court did give an instruction on false imprisonment as a lesser included offense of kidnapping and fails to demonstrate how the evidence supported an instruction on any of the other lesser crimes. Our review of the record satisfies us that the evidence did not support an instruction on any lesser offense other than false imprisonment, as to which an instruction was given. *See* §§ 30–4–1 to –4.

█ The court also did not err in refusing to give the requested instructions on second-degree murder and voluntary manslaughter. Aside from the testimony that defendant strangled his victim, the only evidence as to the manner of her death that implicated him (and thus supported an instruction on a criminal offense) was testimony that defendant said he tied her to a tree and left her, or that he struck her down with her car. Testimony by a medical investigator indicated that someone exposed to below-freezing temperatures without clothing could become incapacitated within minutes and that, in his opinion, the death was a result of a homicidal assault. This evidence does not support a charge of second-degree murder or manslaughter.

█ With regard to the requested alibi instruction, we note the uniform jury instruction on this topic provides that no instruction shall be given. *See* SCRA 1986, 14–5150. We are in substantial agreement with the Committee Comment that an alibi instruction is unnecessary because an alibi is not a technical or "legal" defense, but an attempt to cast doubt on the proof of the elements of the crime, and that an instruction therefore would merely comment on

the evidence. As this case presents no considerations contrary to that analysis, we conclude the court did not err in this refusing to give the requested instruction.

Finally, defendant appeals the introduction of certain evidence, including testimony by the victim's son, drawings and videotapes of the scene where the victim's remains were discovered, a picture of the victim while alive, and lay testimony to identify defendant's handwriting. Defendant contends that this evidence was more prejudicial than probative and, under SCRA 1986 11–403, should have been excluded; however, no abuse of discretion on this question has been demonstrated.

*Conclusion.* For the foregoing reasons, this case is remanded to the district court for a new sentencing hearing on defendant's convictions for kidnapping, criminal sexual penetration, and robbery. In all other respects, the verdict and judgment are affirmed.

IT IS SO ORDERED.

MONTGOMERY and WILSON, JJ., concur.