This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

　　　Plaintiff-Appellee,

v.　　　　　　　　　　　　　　　　　　　　　**No. A-1-CA-36352**

**JUAN H. AGUILAR,**

　　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Judge**

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}**　　Defendant appeals his conviction for second-degree kidnapping, contrary to NMSA 1978, Section 30-4-1 (2003), claiming that (1) the district court's failure to define "sexual offense" in the jury instructions was fundamental error, (2) the district court's failure to instruct the jury on unlawfulness as an element was reversible error, (3) there was insufficient evidence to sustain his conviction, and (4) the district court incorrectly sentenced him to lifetime parole. Because we conclude that the district court's failure to instruct the jury on the definition of sexual offense under the facts of this case was fundamental error and that sufficient evidence supported Defendant's conviction, we reverse and remand for a new trial.

**BACKGROUND**

**{2}** At trial, Victim testified that on the morning of February 19, 2016, she set out to walk to Walmart to buy things for her children. While she was walking, she spoke to her mother on her cell phone. After she had walked two or three blocks, Defendant pulled up and asked Victim if she needed a ride. Victim said she needed a ride to Walmart and Defendant said he would take her there. Victim got in the truck. Defendant made a U-turn and drove down a dirt road, in the opposite direction from Walmart.

**{3}** Victim stated that she "went into shock" and "didn't know what to think" because although this road was down the street from where she lived, there were no houses or business, "just dirt." Victim texted her mother, asking for help because she was scared and did not know what to do. Defendant drove down the road for some distance and parked. He asked Victim if she would kiss him and Victim said no. Defendant got out of the truck and made a phone call.

**{4}** While Defendant was outside of the truck, Victim spoke with her mother on her phone, using her earbuds. At some point during Victim's communication with her mother, Victim's sister called the police. Defendant then got back in the truck, put his hand on Victims breast, outside her clothing, and tried to rub Victim's back. Defendant tried to kiss Victim, putting his hand on her face and trying to pull her toward him. Victim pulled away. Defendant was not able to kiss Victim and Police officers arrived less than five minutes later.

**{5}** Defendant also testified at trial and his account was different. He testified that Victim approached him and asked if he would take her to Walmart. Defendant said he could take her part of the way. Victim agreed and got in the truck, but at some point during the trip, Victim changed her mind and wanted to go home instead. Defendant turned around and started driving away from Walmart, after which Victim inexplicably refused to speak to him again. Defendant asked Victim to get out of the truck several times, to no avail. He asked her where she lived, but she did not respond. He pulled over and told her she could get out, but she refused. Defendant called his wife and told her he would be late. Defendant asked Victim where she wanted to get out because he wanted to take her back to Walmart and be done with the encounter. Defendant had started to turn the truck around when the police arrived. According to Defendant, he did not ask to kiss Victim, touch her, or kiss her.

**{6}** The jury was instructed that to find Defendant guilty, the State must prove beyond a reasonable doubt that:

> 1. [D]efendant confined or transported [Victim] by deception by offering her a ride to Walmart and then taking her down an empty dirt road;

> 2. [D]efendant intended to inflict a sexual offense on [Victim];

3.     This happened in New Mexico on or about the 19th day of February, 2016.

The jury found Defendant guilty. Defendant appeals.

**DISCUSSION**

**A.     The Failure to Define Sexual Offense Was Fundamental Error**

**{7}**     To convict Defendant of kidnapping, the jury was required to find that Defendant acted with the specific intent to inflict a sexual offense on Victim. In New Mexico, sexual offenses are a category of criminal offense set forth in NMSA 1978, Sections 30-9-1 to -21 (1963, as amended through 2017), and include criminal sexual contact (CSC), defined as the "unlawful and intentional touching of or the application of force, without consent, to the *unclothed* intimate parts of another." Section 30-9-12(A) (emphasis added); *see also* Section 30-9-11 (defining criminal sexual penetration (CSP) as "the unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse or the causing of penetration, to any extent and with any object, of the genital or anal openings of another, whether or not there is any emission"). Thus, in order to find that Defendant acted with the specific intent to inflict a sexual offense, the jury had to find that Defendant, at a minimum, intended to touch the unclothed intimate parts of Victim. Because Defendant did not commit and was not charged with committing a sexual offense, the jury was not separately instructed on the definition or elements of CSC or CSP. Defendant argues that without this information, the jury may not have understood that his actions did not constitute a sexual offense, or what was necessary to find that the specific intent element was satisfied in this case. The State responds that no definition was required because "sexual offense" has a conventionally understood meaning, and further, that because the evidence of Defendant's intent was substantial, there is no likelihood of juror confusion.

**{8}**     Because Defendant's argument was not preserved below, we review for fundamental error. *State v. Cabezuela*, 2011-NMSC-041, ¶ 21, 150 N.M. 654, 265 P.3d 705; *accord* Rule 12-321(B)(2)(c) NMRA. Under fundamental error review, we ask whether "a defendant's conviction shocks the conscience because either (1) the defendant is indisputably innocent, or (2) a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Astorga*, 2015-NMSC-007, ¶ 14, 343 P.3d 1245 (alteration, internal quotation marks, and citations omitted). "Under this standard, we must determine whether a reasonable juror would have been confused or misdirected . . . from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Samora*, 2016-NMSC-031, ¶ 27, 387 P.3d 230 (internal quotation marks and citation omitted). "In applying the fundamental error analysis to deficient jury instructions, we are required to reverse when the misinstruction leaves us with no way of knowing whether the conviction was or was not based on the lack of the essential element." *State v. Montoya*, 2013-NMSC-020, ¶ 14, 306 P.3d 426 (internal quotation marks and citations omitted).

**{9}** In this case, we must determine whether a missing definitional instruction is fundamental error. Our courts have stated that a missing definition generally "cannot result in the sort of fundamental unfairness that undermines the integrity of the judicial system[,]" *State v. Barber*, 2004-NMSC-019, ¶ 20, 135 N.M. 621, 92 P.3d 633, unless the missing definition is "akin to a missing elements instruction." *State v. Mascareñas*, 2000-NMSC-017, ¶ 20, 129 N.M. 230, 4 P.3d 1221 (holding that "the jury instructions should have included a definition of 'reckless disregard' to prevent confusion of the standard necessary to sustain a conviction and that "the trial court's failure to provide the instruction was a critical determination akin to a missing elements instruction"). Two New Mexico Supreme Court cases highlight the differences in these standards.

**{10}** In *Barber*, our Supreme Court determined that a missing definition did not constitute fundamental error because it was cured by other factors. 2004-NMSC-019, ¶ 1. The defendant was charged with possession of methamphetamine with intent to distribute, and he argued that the failure to instruct the jury on the legal definition of "possession" was fundamental error because he was only in proximity to the drugs, and not in "control" over them as required for conviction. *Id.* ¶¶ 10, 12. Our Supreme Court acknowledged that "the legal definition of possession is not necessarily rooted in common discourse" but concluded that the missing definition was not akin to a missing elements instruction because "no distinct possibility exists from the evidence that the jury convicted [the defendant] without finding all the elements beyond a reasonable doubt." *Id.* ¶¶ 22, 26. First, the *Barber* Court observed that although the jury was not instructed on the legal definition of possession (that the defendant had knowledge and control over the drugs), the jury's common understanding would equate possession with ownership rather than proximity, and because "ownership [was] more difficult to prove than possession alone[,]" this understanding would place a greater burden of proof on the prosecution than what was required under the law. *Id.* ¶ 26. Second, the Court determined that the evidence was such that "there [was] no reasonable likelihood that the jury was confused, or confused enough to convict on proximity alone." *Id.* ¶ 28. Third, the Court observed that the jury could not have found that the defendant had the intent to distribute "without also finding that [the defendant] was exercising some degree of control over the drugs." *Id.* ¶ 30. Based on these considerations, the *Barber* Court concluded that "even though arguably ambiguous without defining possession, [the jury instructions omitting the definition] did not create confusion in the jury that would undermine the reliability of the verdict and the integrity of our judicial system." *Id.* ¶ 32.

**{11}** In contrast, where jury instructions fail to properly instruct the jury on an essential element of an offense, our Supreme Court has held that it is fundamental error to omit the definition. *Mascareñas*, 2000-NMSC-017, ¶ 20. In *Samora*, for example, the defendant was convicted of kidnapping with intent to commit a sexual offense and CSP after he "was accused of luring a sixteen-year-old male into his truck by deception, driving him to a secluded location in Albuquerque, and then forcibly penetrating him in the anus." 2016-NMSC-031, ¶ 1. The jury instructions failed to include language instructing the jury that it must determine that the sexual contact was non-consensual for it to be unlawful, *id.* ¶¶ 1, 24, and "did not define the term 'sexual offense' beyond providing the elements of CSP and CSC through other instructions." *Id.* ¶ 33. The Court

noted that despite the absence of a definition of "sexual offense" in the jury instructions, the jury found that the defendant had committed a "sexual offense" against the victim during the kidnapping. *Id.* ¶ 31. The Court was concerned that "the jury . . . could have reached this finding without an understanding that in this case, it had to find beyond a reasonable doubt that the anal penetration was non-consensual for [the defendant's] act to constitute a sexual offense." *Id.* The Court concluded that "[b]ecause the jury may have been confused or misdirected as to whether consensual sex between [the victim] and [the defendant] could still be a sexual offense," the kidnapping charge was infected by potential confusion. *Id.* ¶ 33. The Court ultimately reversed the kidnapping conviction for fundamental error, stating "we cannot determine whether the jury found that the sexual act was non-consensual beyond a reasonable doubt[.]" *Id.*

**{12}**     Turning to this case, Defendant's intent to inflict a sexual offense was an essential element of his conviction and we must determine whether a reasonable juror would have been confused or misdirected by the lack of a definition for "sexual offense," such that the instructions, "through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Id.* ¶ 27. The evidence presented in the record demonstrates the potential for juror confusion here. Specifically, in addition to driving Victim away from her intended destination, Victim testified that Defendant asked if he could kiss her, and although she said no, he then rubbed her back, touched her clothed breast, and pulled her face toward him and tried to kiss her. Victim pulled away before Defendant could kiss her. There was no evidence presented to suggest that Defendant made any further advances after that point, that he continued his unwanted attempts, or that he escalated his behavior before police arrived approximately five minutes later. Defendant, for his part, denied that these acts occurred at all. If the jury believed Victim, then the jury may reasonably have concluded that Defendant's conduct demonstrated a disregard for Victim's denial of consent and evinced an intent to escalate his conduct to the level of a sexual offense. However, the evidence also suggests that Defendant did not continue his unwanted advances after his unsuccessful attempt to kiss Victim, from which a reasonable jury could also have inferred that Defendant had accepted Victim's rejection and did not intend any further contact. Under the second possibility, without a definition of sexual offense, the jury may have mistakenly concluded that the mens rea element was satisfied by Defendant's conduct—that in touching Victim's clothed breast and trying to force her to kiss him, Defendant inflicted a sexual offense. Under the facts presented in this case, a definitional instruction was necessary to inform the jury that Defendant's conduct did not constitute a sexual offense, and that to convict Defendant of kidnapping, the jury had to find beyond a reasonable doubt that Defendant intended to do more than what occurred—that he must have intended a further act that constituted a sexual offense. Based upon the facts at issue, the lack of a definitional instruction leaves us with no way of knowing whether the jury found that Defendant intended to commit a sexual offense beyond a reasonable doubt. *See id.* ¶ 29.

**{13}**     Unlike *Barber*, no curative factors are present here. First, although the State argues that "sexual offense" has a conventionally understood meaning—"intentional contact with a person's intimate parts against their will"—this understanding

underscores the very problem we note above, that "sexual offense might be understood to include touching over the clothing. If the jurors understood sexual offense to include unwanted touching over clothing, that misunderstanding would have allowed the jury to convict based upon an incorrect belief that Defendant's conduct amounted to a sexual offense. Unlike *Barber*, where the jurors' misunderstanding would impose a heavier burden on the prosecution, here, the jury's misunderstanding would impose a lighter burden and allow the jury to convict based on that improper, lesser standard. *See Barber*, 2004-NMSC-019, ¶ 26.

**{14}** Second, unlike in *Barber*, the strength of this evidence is not such that it "belies any claim of [the defendant's] indisputable innocence[.]" *Id.* ¶ 14. The State argues that Victim's testimony is so strong that there is "simply no likelihood of any material confusion that Defendant intended to commit a sexual offense on Victim." Even if the jury had accepted Victim's testimony, however, it is not sufficient to cure the possibility that Defendant's kidnapping conviction could be based on a misunderstanding that a sexual offense had actually been committed. The evidence here did not independently and indisputably establish Defendant's intent, and therefore, does not present the same compelling circumstances as in *Barber*, where our Supreme Court concluded there was no doubt whether the jury actually found the essential elements of the crime.

**{15}** Finally, the element of intent to inflict a sexual offense was not satisfied through other instructions. As the State points out, "New Mexico courts have not often been called upon to determine whether there was sufficient evidence of intent to commit a sexual offense in a kidnapping case where no sexual offense occurred." This is not a case in which kidnapping with intent to commit a sexual offense was charged alongside the completed crime. In such cases, instructions on the other sexual crime can adequately define the intent required for conviction of kidnapping. *See, e.g.*, *State v. Laguna*, 1999-NMCA-152, ¶ 1, 128 N.M. 345, 992 P.2d 896 (addressing conviction of first-degree kidnapping and CSC of a minor). Here, Defendant's conviction could only be based on an intent to commit a future act—a sexual offense—that was not alleged to have actually been committed. Since Defendant was not charged with a sexual offense and sexual offense was not otherwise defined, the intent requirement was not instructed or implicitly found by way of conviction a separate charge.

**{16}** Instead, similar to *Samora*, the jury may have been confused or misdirected as to whether Defendant's actions constituted a sexual offense on Victim. 2016-NMSC-031, ¶ 33. Because we cannot determine whether the jury found the mens rea element based upon Defendant's completed actions or his intended future actions, we have no way of knowing whether the conviction was or was not based on all essential components of intent to commit a sexual offense beyond a reasonable doubt. *See id.* ¶ 29 ("Fundamental error occurs when jury instructions fail to inform the jurors that the State has the burden of proving an essential element of a crime and we are left with 'no way of knowing' whether the jury found that element beyond a reasonable doubt."). Therefore, we must reverse Defendant's kidnapping conviction for fundamental error.

**B.  The Denial of Defendant's Request for an Instruction on Unlawfulness Was Not Reversible Error**

**{17}**  Defendant also argues that the district court erred in denying his request to instruct the jury on "unlawfulness" using UJI 14-132 NMRA. The State does not dispute that this issue was preserved at trial, and so we review the district court's refusal for reversible error. *See State v. Montoya*, 2015-NMSC-010, ¶ 25, 345 P.3d 1056.

**{18}**  "When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error." *State v. Henley*, 2010-NMSC-039, ¶ 25, 148 N.M. 359, 237 P.3d 103 (internal quotation marks and citation omitted). "Reversible error arises if a reasonable juror would have been confused or misdirected. Jury instructions are to be read and considered as a whole and when so considered they are proper if they fairly and accurately state the applicable law." *Montoya*, 2015-NMSC-010, ¶ 25 (alteration, internal quotation marks, and citation omitted). "The trial court need not . . . offer duplicate instructions if the instructions given adequately apprise the jury of the controlling law." *State v. Bunce*, 1993-NMSC-057, ¶ 8, 116 N.M. 284, 861 P.2d 965 (citation omitted).

**{19}**  Defendant argues that unlawfulness is an element of kidnapping and therefore, UJI 14-132, which defines "[u]nlawfulness as an element," was required. *See* Section 30-4-1(A) (defining kidnapping, in part, as "the *unlawful* taking, restraining, transporting or confining of a person" (emphasis added)); *see also* UJI 14-132 use note 1 ("[The] instruction was intended" for use "when the statutory definition of the offense includes the term "unlawful," and an issue is raised as to the lawfulness of the defendant's act. . . . These offenses include certain assault and battery offenses, sex offenses and false imprisonment or kidnapping offenses."). UJI 14-132 states that "[i]n addition to the other elements of [kidnapping], the state must prove beyond a reasonable doubt that the act was unlawful." The instruction then provides two alternative definitions for unlawfulness, stating, "For the act to have been unlawful, it must have been done": (1) with the intent to arouse or gratify sexual desire, or (2) to intrude upon the bodily integrity or personal safety of Victim. Although Defendant did not specify to the district court which of the "unlawfulness" alternatives he would have preferred, on appeal, he argues that unlawfulness should have been defined to mean that the act must have been done "to intrude upon the bodily integrity or personal safety" of the Victim.

**{20}**  In *State v. Osborne*, 1991-NMSC-032, ¶ 25, 111 N.M. 654, 808 P.2d 624, our Supreme Court suggested that although unlawfulness is a "statutory element" appearing in many criminal statutes, including kidnapping, other elements of the offense within the jury instructions may "cover" the requirement that the defendant acted unlawfully. *Id.* ¶ 30. After deciding *Osborne*, however, our Supreme Court adopted UJI 14-132 with the intention of "aid[ing] the court and the parties in preparing an instruction when the statutory definition of the offense includes the term 'unlawful' and an issue is raised as to the lawfulness of the defendant's act." Whether the separate instruction is necessary depends on whether "unlawfulness" is at issue, as when an excuse or justification for an act is asserted, or whether proof of the other elements of the offense establish the

element of unlawfulness without the need for additional instruction. *Osborne*, 1991-NMSC-032, ¶¶ 29-30.

**{21}** In this case, the element of unlawfulness was adequately covered by the specific intent element of the kidnapping instruction given at trial. The jury was instructed that it must find that Defendant intended to inflict a sexual offense on Victim in order to convict on the kidnapping charge. While Defendant argues that UJI 14-132 "would have made clear to the jury that it had to find that [Defendant] drove down the dirt road with the intent to 'intrude upon the bodily integrity or personal safety [of Victim],' " an intent to commit a sexual offense necessarily encompasses this conduct. *See* UJI 14-132. The jury could not have found that Defendant acted with the intent to inflict a sexual offense without also concluding that Defendant had the intent intrude upon the bodily integrity of Victim. Defendant's requested instruction on unlawfulness was therefore unnecessary as duplicative of the instruction given at trial and the district court did not err in refusing it.

## C.    Sufficiency of the Evidence

**{22}** Although we reverse, "we are required to determine whether sufficient evidence was presented to support [the defendant's conviction] to avoid double jeopardy concerns should the [s]tate seek to retry the defendant." *Samora*, 2016-NMSC-031, ¶ 34. "If we find that sufficient evidence was presented at trial to support a conviction, then retrial is not barred. We review [the defendant's] claim under the erroneous instruction provided to the jury at trial." *State v. Dowling*, 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d 930 (citation omitted).

> Under a sufficiency of the evidence test, we view the evidence in the light most favorable to the verdict and draw all inferences in favor of the verdict to determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction.

*State v. Suazo*, 2017-NMSC-011, ¶ 32, 390 P.3d 674 (internal quotation marks and citations omitted). "[T]he jury is free to reject [the defendant's] version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661.

**{23}** For the first element, the State had to prove that Defendant "confined or transported [Victim] by deception by offering her a ride to Walmart and then taking her down an empty dirt road." As Defendant acknowledges, "Kidnapping by deception can occur when an association between a victim and a defendant begins voluntarily but the defendant's actual purpose is other than the reason the victim voluntarily associated with the defendant." *State v. Simmons*, 2018-NMCA-015, ¶ 18, 409 P.3d 1030 (internal quotation marks and citation omitted), *cert. denied*, 2017-NMCERT-___(No. S-1-SC-

36767, Dec. 20, 2017). Where a defendant picked up a victim in his car, saying he would take her home, a jury "could have found that [a victim] was restrained by deception when [the defendant] changed the intended destination" from the victim's house to a remote location. *State v. Jacobs*, 2000-NMSC-026, ¶ 5, 25, 129 N.M. 448, 10 P.3d 127. Thus, for this first element to be satisfied, Defendant need only have had some purpose other than the reason Victim voluntarily associated with him. Here, the jury could have believed Victim's testimony: She got in the truck because Defendant said he would take her to Walmart, and Defendant changed the destination without discussion, driving away from Walmart. Therefore, there was sufficient evidence to satisfy this first element.

**{24}** Second, the State must have shown that Defendant "intended to inflict a sexual offense on [Victim]." Defendant makes much of the fact that no sexual offense was committed, but acknowledges that he "does not have to commit a sexual offense in order to be guilty of second-degree kidnapping." A jury may infer, "from evidence of acts committed at some later point during the commission of a kidnapping, that the necessary criminal intent existed at the time the victim first was restrained." *State v. McGuire*, 1990-NMSC-067, ¶ 10, 110 N.M. 304, 795 P.2d 996.

**{25}** Victim testified that after Defendant asked if she would kiss him and she said no, Defendant tried to kiss her anyway. Victim also testified that after she refused to kiss him, Defendant touched her breast and tried to rub her back. Finally, Victim testified that she called and texted her mother, asking for help. From this testimony, the jury could reasonably have concluded that because Victim did not consent to Defendant's advances and Defendant did not honor her refusals, coupled with Defendant's act in driving Victim away from her intended destination to a remote location, Defendant intended to inflict a sexual offense. Viewing the evidence in the light most favorable to the verdict, the evidence is sufficient to support Defendant's conviction, and retrial is therefore permissible.

**{26}** On retrial, the district court may instruct the jury on the definition of sexual offense by giving the statutory definition of the particular sexual offense or offenses that form the basis of the State's theory of the case, or, similar to our uniform jury instruction for attempt, UJI- 2801 NMRA, by instructing the jury on the essential elements of the intended crime immediately following the kidnapping instruction.

## CONCLUSION

**{27}** Because we reverse Defendant's conviction for second-degree kidnapping and remand to the district court, we do not review Defendant's argument that the district court exceeded its statutory authority by sentencing Defendant to lifetime parole—an argument to which the State concedes on appeal.

**{28}** **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**BRIANA H. ZAMORA, Judge**

**MICHAEL D. BUSTAMANTE, Judge Pro Tempore**