889 P.2d 860

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Johnny PISIO, Defendant–Appellant.**

**No. 14768.**

Court of Appeals of New Mexico.

Nov. 23, 1994.

Certiorari Denied Jan. 5, 1995.

Tom Udall, Atty. Gen., Daniel F. Haft, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, David Henderson, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

MINZNER, Chief Judge.

■ Defendant appeals his convictions for two counts of second-degree criminal sexual penetration (criminal sexual penetration committed during a felony) (CSP II, felony), and one count each of kidnapping, assault with intent to commit a violent felony, and criminal sexual contact (CSC). In his briefs Defendant argued that the trial court committed reversible error (1) by failing to suppress a question he asked police following his request for assistance of counsel; and (2) in failing to instruct the jury (a) on false imprisonment as a lesser-included offense of kidnapping; (b) on third-degree criminal sexual penetration (CSP III) as a lesser-included offense of CSP II, felony; and (c) on assault as a lesser-included offense of assault with intent to commit a violent felony. Issues raised in the docketing statement but not briefed are deemed abandoned. *State v. Ramos,* 115 N.M. 718, 720, 858 P.2d 94, 96 (Ct.App.), *cert. denied,* 115 N.M. 602, 856 P.2d 250 (1993).

We granted Defendant's motion prior to oral argument to argue the effect of *State v. Brooks,* 117 N.M. 751, 877 P.2d 557 (1994), decided after his appeal had been fully briefed. In his motion and at oral argument, Defendant urged us to hold that fundamental error resulted from the lack of adequate jury instruction or instructions on the issue(s) of whether the facts supported his convictions of five separate criminal offenses. We reverse Defendant's conviction for kidnapping on the ground that on the facts of this case, double jeopardy principles preclude a conviction for kidnapping in addition to convictions for CSP II, felony. We affirm the other convictions. We remand for resentencing and entry of an amended judgment.

## FACTS

Victim testified to an incident that occurred while she was moving out of a residential alcohol treatment center on February 29, 1992, the day before her graduation from the program. Defendant neither testified nor presented evidence. The following factual background paraphrases Victim's testimony.

Victim met Defendant about three weeks earlier when he entered the program and moved into apartment 124A; Victim resided in 124C. Although they became friends and visited in each other's apartments, they were not romantically or intimately acquainted.

Sometime after 4:30 p.m., February 29, Victim gave Defendant a ride to a bar across town to repay a debt. Upon their return, Defendant went to Victim's apartment to give her his phone number; there, he offered to carry things to the car for her. She declined. However, to get from her apartment to her car, Victim had to pass Defendant's apartment. After she had made several trips to her car, Defendant came out of his apartment and helped carry the rest of her belongings.

On the last trip, Defendant carried Victim's bag to his apartment and asked her to come inside for a minute. She did so. He closed and locked the door, told Victim to sit down, and said that he wanted to give her a kiss. She thanked him, but said she was not interested. Defendant then moved closer to Victim on the couch. Victim tried to get up to go out the door or move toward the door, but Defendant was blocking her way. She moved to another couch. Defendant then squeezed between Victim and the couch arm and attempted to kiss her. She yelled at him, said that she did not understand his

behavior, and told him that she wanted to leave. He clamped his hand over her mouth and tried to turn her toward him for a kiss. She resisted. They struggled to the floor.

On the floor Defendant straddled Victim around her waist and tried to pin her arms down. She managed to pull herself over to the opposite couch and grab the leg in an attempt to pull away, but he pulled her back by the throat with the crook of his arm and dragged her toward a hall, which led to two bedrooms and a bathroom.

When Victim continued to refuse to kiss him, Defendant began sucking her breast, pulled down her shorts and underwear, performed oral sex for about a minute, tried to kiss her again, resumed oral sex for a little longer, then penetrated Victim vaginally with his penis. At this point, approximately five minutes had passed since Victim entered Defendant's apartment. Defendant told Victim to wipe herself, insisted that she go into his bedroom and get some rags to do so, and told her to dress.

When she refused to go in the bedroom, Defendant tried to force her, but she held onto the bathroom door frame. Defendant explained that he was afraid she would leave while he was in the bedroom. She told him that she would stand in the bathroom doorway where he could see her.

When Victim subsequently left the bathroom, Defendant was standing in the hallway, a little farther than three feet from the bathroom door. She walked up the hallway towards the front door, with Defendant walking backwards in front of her. Before they got to the living room, Defendant grabbed Victim by the shoulders, told her that he was going to "finish what he started," shoved her to the floor, and penetrated her vaginally. During the next few minutes, he attempted repeated penetrations. Ultimately, he told her things hadn't worked out as planned, put his clothes back on, and again told her to dress.

To secure her exit from the apartment, Victim finally kissed Defendant and asked him to help her carry to her car the bag he had brought into his apartment. He did so. She drove away at approximately 6:17 p.m.

## I. DENIAL OF MOTION TO SUPPRESS

Defendant was arrested at his apartment during the evening of February 29. Advised of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he signed a consent to search form, but claimed his right to counsel. He remained at the apartment during the search. Once he was removed to the police station, a detective who had been present at the search, but who had arrived after Defendant had been arrested, advised him of the reason for arrest and again read him his rights. An interview occurred at approximately 2:00 a.m. on March 1. The detective recorded the interview. During the interview, the detective asked Defendant to verify his signature on the consent to search form and asked if he was aware that certain items had been seized from his apartment during the search. The detective confirmed that Defendant wished to claim his right to counsel, advised Defendant of the arraignment date and the charges filed, and then turned off the tape recorder. Five minutes later, the detective turned the recorder back on because Defendant had asked whether he would "take the rap" if Victim had engaged in sex with someone else. The detective repeated the question on tape and then explained that the State would seek a search warrant to get bodily samples from Defendant for serological examination. Between the time the tape recorder was initially turned off and the time Defendant asked his question, the detective was completing paperwork while Defendant sat in the detective's office. Defendant asked no further questions. The evidence of Defendant's question was introduced at trial over his objection.

On appeal, Defendant claims that his Fifth Amendment privilege against self-incrimination was violated. Defendant does not challenge his responses to the detective's questions during the interview, because those responses were not inculpatory. Rather, Defendant contends that the trial court erred in admitting his question to the detective concerning whether he would be held responsible if Victim had engaged in sex with someone else.

Defendant notes that under *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980), custodial interrogation includes both direct questions and their functional equivalent, i.e., "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (Footnotes omitted.) Defendant further notes that the detective testified he was ready to turn the tape back on if Defendant made a statement with "evidentiary value." He reasons that, under these circumstances, the detective's silence (after the questioning about Defendant's signature and items seized and the imparting of information about arraignment) was within the *Innis* concept of custodial interrogation. *See generally State v. Ybarra*, 111 N.M. 234, 238, 804 P.2d 1053, 1057 (1990) (compulsion present in emergency room atmosphere rose above that inherent in custody itself, and police took advantage of it by subjecting the defendant to circumstances which they knew or should have known were likely to yield incriminating responses). Based on *Ybarra*, Defendant argues that even silence on the part of a police officer can be the functional equivalent of direct questioning. Alternatively, Defendant argues that his question was tainted by the prior taped interview, and that the State failed to prove a valid waiver of his Fifth Amendment privilege against self-incrimination. *See Miranda*, 384 U.S. at 475, 86 S.Ct. at 1628.

▇ The federal constitution does not preclude the use of incriminating statements against the accused if those statements can be characterized as volunteered. *Id.* at 478, 86 S.Ct. at 1630. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.... Volunteered statements of any kind are not barred by the Fifth Amendment...." *Id.* Whether "voluntary" is examined in the context of the Fifth Amendment (waiver) or the Fourteenth Amendment (due process), the benchmark is the absence of governmental coercion or police overreaching. *See generally State v. Franks*, 119 N.M. 174, 178–179, 889 P.2d 209, 213–214 (Ct.App.1994) (N.M.Ct.App.1994) (quoting *Colorado v. Connelly*, 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986)). A question may qualify as "volunteered," even though it is made by one who had previously requested counsel. *See People v. Enoch*, 122 Ill.2d 176, 119 Ill.Dec. 265, 273–74, 522 N.E.2d 1124, 1132–33 (where police comments were those associated with custody and arrest, Supreme Court affirmed trial court decision that defendant's spontaneous statement, made after claiming Fifth Amendment right to counsel, was voluntary), *cert. denied*, 488 U.S. 917, 109 S.Ct. 274, 102 L.Ed.2d 263 (1988).

"Most volunteered statements fall into one of two categories: statements which the police have made no attempt to elicit, and statements which respond to a police question or which occur during the course of interrogation, but which are totally unresponsive to the question asked." 3 William E. Ringel, *Searches and Seizures, Arrests and Confessions* § 27.4(a), at 27–26.6 (2d ed. 1994) (footnote omitted).

In the second form of volunteered statement, the incriminating remark is usually so far removed from the subject of the question asked by the police it is clear that the police did not intend to elicit the remark. Therefore, although the remark may come during the course of questioning, the police cannot be said to have foreseen the likelihood of the specific incriminating statement being made.

*Id.* at 27–27.

The question Defendant asked might be said to be within either category. We find no basis for determining that the police should have anticipated Defendant's response or that Defendant framed the question in response to anything specific the detective had said or done. On de novo review, we conclude that the question Defendant propounded was volunteered. *See United States v. Foskey*, 636 F.2d 517, 521 (D.C.Cir.1980). *Cf. Franks*, 119 N.M. at 178, 889 P.2d at 213 (applied de novo review to issue of whether confession was voluntary when defendant had called 911 for emergency medical assistance).

■ We believe this holding is consistent with the most recent United States Supreme Court authority. *See Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). In *Bradshaw,* the United States Supreme Court decided that when a defendant has claimed the right to counsel, a subsequent waiver of that right requires more than that the defendant responded to further questioning. The defendant must (1) initiate the further conversation, and (2) knowingly and intelligently waive his right to counsel and to remain silent. *Id.* At the time that Defendant asked his question, the detective was silently completing paperwork. Defendant asked his question of his own volition at this time and thereby initiated the conversation. In addition, under the totality of the circumstances, we hold that Defendant intentionally waived his privilege against self-incrimination, and specifically his right to have counsel present when questioned. *Cf. Foskey,* 636 F.2d at 522 (waiver is a determination that must be made in light of totality of circumstances). Relevant circumstances include the spontaneity of the question and "no evidence of otherwise particularly coercive circumstances." *Id.* at 523. Thus, we hold that the trial court did not err in admitting Defendant's question.

## II. INSTRUCTION ISSUES

Defendant was indicted on fifteen different counts. The jury convicted him on five. The five convictions were: Count One (CSP II, felony, based on oral sex occurring in the hallway in the commission of a kidnapping); Count Four (CSP II, felony, based on penile penetration occurring after the events at the bathroom door, relying on the same kidnapping charged in Count One); Count Five (kidnapping, as charged in both Counts One and Four); Count Six (assault with intent to commit a felony, based on menacing conduct in the living room prior to the oral sex charged in Count One); and Count Nine (CSC, based on contact(s) prior to the oral sex charged in Count One).

Defendant claims that the trial court erred in failing to instruct the jury on his tendered, lesser-included offense instructions of CSP III for CSP II, felony; false imprisonment for kidnapping; and assault for assault with intent to commit a violent felony. He contends that there was evidence to establish each lesser offense and that under some view of the evidence the lesser offense was the highest degree of the crime committed. *See State v. Aguilar,* 117 N.M. 501, 506, 873 P.2d 247, 252, *certs. denied,* —— U.S. ——, ——, 115 S.Ct. 168, 182, 130 L.Ed.2d 105, 116 (1994). Thus, he argues, he was entitled to have the jury consider the evidence pursuant to lesser-included offense instructions.

Defendant also argues that the trial court committed fundamental error when it failed to instruct the jury on criminal intent. *See Brooks,* 117 N.M. at 755, 877 P.2d at 561 (fundamental error for trial court not to instruct the jury on the single criminal intent doctrine when Supreme Court on appeal could not ascertain whether there existed a single intent as a matter of law).

Defendant's argument based on *Brooks* raises several issues. Some are explicit, and others are implicit. He expressly argued in his pre-oral argument motion that, on these facts, reasonable minds could disagree on the number of criminal acts he committed. He argued there are issues ■ whether the evidence at trial supported five separate criminal offenses as reflected in the jury verdict; [2] whether the evidence supported a single, ongoing sexual assault resulting in criminal sexual penetration (*e.g.,* CSP III); [3] whether the evidence supported a single CSP conviction and a single CSC conviction; or [4] whether the evidence supported a single initiatory crime (*e.g.,* kidnapping), a single CSP (CSP II), and a single CSC conviction.

We first address the instruction issues raised in the briefs. We begin with the argument regarding assault.

### A. Lesser–Included Offense Instructions on Assault

■ Defendant argues that the jury could have found that he lacked specific intent to commit CSP at the time of the assault because the evidence bearing on his intent was circumstantial in nature. Thus, he contends that the trial court should have instructed

the jury on simple assault. *See* SCRA 1986, 14–301 (essential elements of assault). Because no reasonable view of the evidence would support simple assault as being the greatest offense committed, the district court properly denied Defendant's lesser-included offense instruction.

■ Because an individual's intent is seldom subject to proof by direct evidence, intent may be proved by circumstantial evidence. *See State v. Hoeffel,* 112 N.M. 358, 361, 815 P.2d 654, 657 (Ct.App.), *cert. denied,* 112 N.M. 279, 814 P.2d 457 (1991); SCRA 1986, 14–141 (general criminal intent instruction allowing intent to be inferred from surrounding circumstances). Defendant did not testify at trial, and Victim's account of the circumstances underlying the charge of assault with intent to commit a violent felony was essentially unchallenged. The only reasonable inference for the jury was that any assault which occurred during this interim was assault with intent to commit CSP. Defendant should have either been convicted of the offense as charged or acquitted. *See State v. Gammill,* 102 N.M. 652, 656, 699 P.2d 125, 129 (Ct.App.), *cert. denied* (March 5, 1985). Thus, on the record before us, we conclude that the trial court properly denied Defendant's tendered instruction on simple assault.

### B. Lesser–Included Offense Instructions on CSP III and False Imprisonment

We jointly consider Defendant's contentions that the trial court erred in not giving a CSP III instruction as a lesser-included offense instruction for each count of CSP II, felony, and that he was entitled to an instruction on false imprisonment on the kidnapping charge alleged in Count Five. These contentions are so closely related that we may address them as interdependent.

In *State v. Corneau,* 109 N.M. 81, 87, 781 P.2d 1159, 1165 (Ct.App.), *certs. denied,* 108 N.M. 668, 777 P.2d 907 (1989), we said that if criminal sexual penetration occurs within the res gestae of a felony, then it occurs "in the commission of" a felony within the meaning of CSP II, felony, as defined by NMSA1978, Section 30–9–11(D)(4) (Repl.Pamp.1994). As the Supreme Court noted in *Swafford v.*

*State,* 112 N.M. 3, 14, 810 P.2d 1223, 1234 (1991), appellate cases implicating CSP II, felony, often have involved either kidnapping or false imprisonment. *Id.*

■ "Kidnaping is the unlawful taking, restraining or confining of a person, by force or deception, with intent that the victim ... be held to service against the victim's will." NMSA1978, § 30–4–1(A)(3) (Repl. Pamp.1994). "Deception" is an intentional misleading by actions or falsehood. *State v. Garcia,* 100 N.M. 120, 124, 666 P.2d 1267, 1271 (Ct.App.), *cert. denied,* 100 N.M. 192, 668 P.2d 308 (1983). "To hold for service" includes any act that is compelled or induced because a victim is made to submit her will to a defendant's direction and control. *State v. Ortega,* 112 N.M. 554, 570, 817 P.2d 1196, 1212 (1991). "False imprisonment consists of intentionally confining or restraining another person without ... consent and with knowledge that [the act is without] lawful authority." NMSA1978, § 30–4–3 (Repl. Pamp.1994).

■ In *Corneau,* we construed the predecessor to Section 30–9–11(D)(4) as requiring the force or coercion necessary to establish false imprisonment to be distinct from that inherent in almost every CSP in order to establish CSP II, felony. Based on *Corneau,* we must conclude that the predecessor to Section 30–9–11(D)(4) required the same degree of distinct conduct when the charge was kidnapping. That is, unless there is force or coercion beyond that inherent in almost every CSP, the proper charge is CSP III.

■ Defendant claims that CSP III would have been the greatest offense committed if the jury found that Defendant lacked the intent to hold Victim for service when he locked the door of his apartment, or if the jury accepted Victim's testimony regarding the actual penetrations that occurred, but rejected her testimony regarding the force used. Defendant also argues that the evidence would have supported a conviction for false imprisonment rather than kidnapping. We believe Defendant's argument that CSP III was the greatest offense committed and his argument that the evidence would have supported a conviction for false

imprisonment rather than kidnapping depend on a single theory. Under that theory, no kidnapping occurred because Defendant initially sought only a consensual kiss. Thus, he never held Victim for service within the meaning of Section 30–4–1(A)(3). Further, because Victim misconstrued or misreported his conduct prior to the acts of criminal sexual penetration, he used only that force or coercion associated with those acts, and thus he was guilty, if at all, of CSP III. His theory is not a reasonable view of the evidence. *See State v. Wilson*, 117 N.M. 11, 14–16, 868 P.2d 656, 659–61 (Ct.App.) (lesser-included offense instruction properly denied if jury would have to unduly fragment evidence to conclude that lesser offense was greatest offense committed), *cert. granted*, 115 N.M. 677, 857 P.2d 788 (1993). The court correctly refused both lesser-included instructions underlying the theory.

■ In Victim's account, Defendant used substantial force to move her into the hallway within a few minutes after she entered the apartment. If the jury believed that account, it also must have believed that if Defendant initially sought consent, he had a contingency plan in case he failed to obtain consent. That plan involved force. Once Defendant restrained Victim by force or coercion for service against her will, the crime of kidnapping occurred. *See State v. McGuire*, 110 N.M. 304, 309, 795 P.2d 996, 1001 (1990). The key to the restraint element in kidnapping is the point at which Victim's physical association with Defendant was no longer voluntary. *See State v. Mares*, 112 N.M. 193, 199, 812 P.2d 1341, 1347 (Ct. App.) (only when defendant became angry did victim become afraid, want to leave, and become aware that defendant might hold her against her will), *cert. denied*, 112 N.M. 235, 814 P.2d 103 (1991). That point clearly occurred early during the incident, and so early that Defendant's intent must be viewed as coexistent.

We conclude the evidence of force used in the living room precludes both a determination that CSP III was the greatest offense committed under either Count One or Count Four, and that Defendant was entitled to a lesser-included instruction on false imprisonment regarding Count Five. We next examine Defendant's arguments based on *Brooks*.

## C. Fundamental Error

We read *Brooks* to mean that intent becomes a factual issue only when the trial court cannot determine, as a matter of law, whether an act is a separate crime or part of a broader scheme. *See id.* at 754, 877 P.2d at 560. According to *Brooks, Herron v. State*, 111 N.M. 357, 805 P.2d 624 (1991), still controls the issue in sex-crime cases. *See Brooks*, 117 N.M. at 754 n. 1, 877 P.2d at 560 n. 1. We conclude that Defendant's reliance on *Brooks* rather than *Herron* is misplaced. Nevertheless, his motion and oral argument raise express and implicit double jeopardy issues, which we address. *Cf. Swafford*, 112 N.M. at 6 n. 1, 810 P.2d at 1226 n. 1 (although double jeopardy issue asserted for first time in collateral proceeding for post-conviction relief, Supreme Court addressed issue because it raised possibility that court imposed unauthorized sentence).

■ According to *Herron*, the number of penetrations is not dispositive of the number of violations of NMSA1978, Section 30–9–11 (Repl.Pamp.1984); rather, the key is whether each penetration is in some sense distinct under the evidence. *Herron*, 111 N.M. at 361, 805 P.2d at 628. By analogy, the number of contacts is not dispositive of the existence of a separate violation of NMSA1978, Section 30–9–12 (Repl.Pamp.1994). *See also State v. Williams*, 105 N.M. 214, 216–17, 730 P.2d 1196, 1198–99 (Ct.App.1986). Examining the evidence at issue in light of *Herron* and *Williams*, a distinction may be drawn as a matter of law between the acts underlying the two CSP II, felony counts of which Defendant was convicted, and the criminal sexual contact count of which he was convicted. We believe that *Herron* and *Williams*, rather than *Brooks*, provide the proper basis for whether conduct in sex-crime cases is unitary and should be understood as supplementing *Swafford*'s double jeopardy analysis on such facts. We conclude under *Herron* and *Williams* that the trial court did not err in submitting these three counts to the jury.

■ The oral sex in the hallway (Count One) and the criminal sexual contact that preceded .it (Count Nine) were distinct in time, place, and other circumstances from the second penile penetration (Count Four) Victim testified occurred after she rose and stood in the bathroom door. The fact that Defendant told Victim prior to the conduct characterized in Count Four that he intended to "finish what he started" does not create a jury issue on the number of counts of sexual misconduct of which Defendant may be convicted. Under *Herron* and *Williams* the acts that occurred and the time, place, and circumstances under which they occurred support these three counts as submitted to the jury, because there is sufficient evidence to support a determination that the conduct underlying those counts is not unitary.

■ However, the conduct underlying Counts One, Five, Six, and Nine all occurred within the same initial five-minute period following Victim's entry into the apartment. The State appears to have based its theory of kidnapping on Defendant's closing and locking the door, its theory of assault on Defendant's menacing behavior in the living room, its theory of CSP II, felony (Count One) on the oral sex that occurred in the hallway, and its theory of criminal sexual contact on actions immediately prior to that oral sex. Thus, we think Defendant's convictions under Counts One, Five, Six, and Nine arose out of conduct that under *Swafford* must be characterized as unitary. Under *Williams* and *Herron*, Counts One and Nine were proper units of prosecution. Counts Five and Six require further analysis.

■ The elements of assault with intent to commit a violent felony (Count Six) differ from the elements of CSP II, a felony (Count One), as well as the elements of kidnapping (Count Five). *See* SCRA1986, 14–309 (essential elements of aggravated assault by threat or menacing conduct with intent to commit a felony). Double jeopardy analysis requires us to determine whether there are separate elements, and, if so, whether there are any other indicia of legislative intent to punish different offenses. *Swafford,* 112 N.M. at 14, 810 P.2d at 1234. "[T]he *Blockburger* test raises only a presumption that

[statutes whose elements are not subsumed one within the other] punish distinct offenses. That presumption . . . is not conclusive and it may be overcome by other indicia of legislative intent." *Id.* There are no such indicators regarding assault with intent to commit a felony. The presumption (that because the elements are different the statutes punish different offenses) controls. Double jeopardy does not preclude conviction and punishment on the charges contained in Count Six as well as the other counts based on the unitary conduct. Count Five, however, is another matter.

■ We have said that ordinarily double jeopardy principles do not preclude multiple punishment for both CSP II, felony, and kidnapping. *See State v. Tsethiikai,* 109 N.M. 371, 374, 785 P.2d 282, 285 (Ct.App. 1989), *cert. denied,* 109 N.M. 262, 784 P.2d 1005 (1990). Nevertheless, we indicated that "special circumstances in a particular case may require merger." *Id. Swafford,* decided after *Tsethlikai,* indicates that we should presume a legislative intent to punish as a single offense unitary conduct underlying multiple counts in certain circumstances. Those circumstances include not only unitary conduct resulting in charged offenses that have exactly the same elements, but also unitary conduct resulting in a charge of two offenses when one subsumes the other. We conclude that the special circumstances to which *Tsethlikai* referred include unitary conduct. We also conclude that double jeopardy precludes conviction and punishment on Count Five.

■ Under *Corneau,* CSP III describes a criminal sexual penetration committed with only that force or coercion associated with an act of sexual penetration for which there was no consent. A person is entitled to withdraw his or her consent or express a lack of consent to an act of criminal sexual penetration at any point prior to the act itself, but force or coercion exerted prior to the act itself will support a conviction for kidnapping or false imprisonment. When the legislature defined CSP II, felony, it indicated its intent that force or coercion executed prior to the act of sexual intercourse without consent but close-

ly associated with it, was the aggravating factor distinguishing CSP III from CSP II, felony. Thus, on some facts, including the facts of this case, the elements of CSP II, felony, will subsume the elements of the felony on which CSP II is based. In other words, the presence or absence of the act of kidnapping distinguishes CSP II, felony, from CSP III, as a lesser-included offense. We have concluded that Defendant was not entitled to a lesser-included instruction on CSP III. Nevertheless, the constitutional protection against double jeopardy precludes multiple punishment for both the greater offense of CSP II, felony, and the aggravating factor, kidnapping, when the conduct is unitary. *See generally Swafford,* 112 N.M. at 14, 810 P.2d at 1234. For this reason, we reverse Defendant's conviction for kidnapping.

## CONCLUSION

In conclusion, we affirm the trial court's denial of Defendant's motion to suppress testimony regarding the question he asked while in custody. We affirm Defendant's convictions of CSP II, felony, as charged in Counts One and Four and in Count Nine for criminal sexual contact. We also affirm Defendant's conviction for assault with intent to commit a felony. The trial court did not err in denying lesser-included offense instructions on assault, false imprisonment, or CSP III. Defendant's conviction of kidnapping is reversed. We affirm each of Defendant's other convictions, and we remand for resentencing and entry of an amended judgment.

IT IS SO ORDERED.

DONNELLY and PICKARD, JJ., concur.