This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.            **NO. 30,565**

**BENEDICTO MARQUEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth H. Martinez, District Judge**

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

This case requires us to decide whether Defendant Benedicto Marquez's convictions for both first degree kidnapping and second degree criminal sexual contact with a minor (CSCM II) violate Defendant's double jeopardy rights, and whether there was sufficient evidence to support Defendant's conviction for kidnapping. Defendant only appeals his conviction for kidnapping. We affirm.

**BACKGROUND**

Defendant's convictions stem from an incident that occurred over the weekend of July 13, 2007, when Victim was visiting Defendant for the weekend. Victim is Defendant's daughter, who was six years old at the time of the incident. At trial, Victim's testimony established the following facts: Victim spent Friday night at her aunt's house, and Defendant came to pick her up there the following morning. Victim went with Defendant when he came to the door, and she got into his car. Victim testified that she and Defendant were alone in the car and that while they were driving home, Defendant pulled the car over to the side of the road. She testified that there were no buildings around, they were out in the open, and no cars went by. Defendant was sitting in the driver's seat, and Victim was in the front passenger seat when Defendant lifted Victim onto his lap and "put his private on [her] butt." Prior to doing this, Defendant had taken Victim's pants off and pulled down his pants. Afterwards, he told Victim to put her pants back on, and they continued to his house.

Defendant also testified at trial and denied the allegations against him. He stated that he, his girlfriend, and his other five children all drove together in a van to pick Victim up from the aunt's house and went directly home from there. Defendant testified that he had never been alone in the car with Victim on that day or any other day.

Defendant returned Victim to her mother the following day. Victim told her mother that Defendant had "put his private in [her] butt[,]" and mother took Victim to the hospital to be examined. The alleged sexual offense was officially reported at Anna Kaseman Hospital, and law enforcement subsequently opened an investigation.

Defendant was convicted of first degree kidnapping, contrary to NMSA 1978, Section 30-4-1(A)(4) (2003), and CSCM II, contrary to NMSA 1978, Section 30-9-13(B)(1) (2003). On appeal, Defendant argues that (1) his rights against double jeopardy were violated by his convictions for both kidnapping and CSCM, and (2) there was insufficient evidence to support his conviction for kidnapping. We review each argument in turn.

**DISCUSSION**

**Double Jeopardy**

Defendant argues that his convictions for kidnapping and CSCM violate his right to be free from double jeopardy because the same acts form the basis for both

3

convictions. "The New Mexico and United States Constitutions each contain a prohibition that no person 'be twice put in jeopardy' for the same offense." *State v. Armendariz*, 2006-NMSC-036, ¶ 19, 140 N.M. 182, 141 P.3d 526 (citation omitted). Whether Defendant's double jeopardy rights have been violated is a constitutional question that we review de novo. *Id.*

The double jeopardy clause provides three separate constitutional protections. It provides protection from (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Id.* ¶ 20; *State v. Montoya,* 2011-NMCA-074, ¶ 29, 150 N.M. 415, 259 P.3d 820. There are two types of cases within the multiple punishment context: (1) "unit of prosecution" cases in which the defendant has been convicted of multiple violations of the same statute, and (2) "double-description" cases where the defendant has been convicted of violations of multiple statutes. *Armendariz,* 2006-NMSC-036, ¶ 20. The protection against multiple punishments based on double-description "prohibits charging a defendant with violations of multiple statutes for the same conduct in violation of the Legislature's intent." *Montoya,* 2011-NMCA-074, ¶ 30 (alteration, internal quotation marks, and citation omitted). Because Defendant argues that his convictions for kidnapping and CSCM violate his right to be free from double jeopardy based on his assertion that

4

they arise from the same conduct for different statutes, this is a double-description case. *Armendariz*, 2006-NMSC-036, ¶ 20.

In double-description cases, we apply the *Swafford* test, first determining whether the conduct underlying the offenses charged is unitary. *Armendariz*, 2006-NMSC-036, ¶ 21. If we find it is unitary, we then proceed to the second part of the test and analyze the relevant statutes to determine whether the Legislature intended to punish the criminal offenses stemming from the unitary conduct separately. *Id.* Accordingly, "double jeopardy bars a conviction if the conduct underlying the two offenses is unitary and the Legislature has not indicated an intent to punish the same conduct separately." *Montoya*, 2011-NMCA-074, ¶ 30 (alteration, internal quotation marks, and citation omitted); *see Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991) (adopting the test in double-description multiple punishment cases).

Under *Swafford*, "if there was a basis for the jury to find factually distinct bases for kidnapping and [CSCM], then the conduct is considered non-unitary." *Allen*, 2000-NMSC-002, ¶ 70, 128 N.M. 482, 994 P.2d 728. "Conduct is not unitary if sufficient indicia of distinctness separate the transaction into several acts." *Montoya*, 2011-NMCA-074, ¶ 31 (internal quotation marks and citation omitted). "Sufficient indicia of distinctness exist when one crime is completed before another, and also when the conviction is supported by at least two distinct acts or forces, one which

completes the first crime and another which is used in conjunction with the subsequent crime." *Id.* (internal quotation marks and citation omitted). Distinctness may also be established by "looking to the quality and nature of the acts, the objects and results involved, and the defendant's *mens rea* and goals during each act." *State v. Saiz*, 2008-NMSC-048, ¶ 30, 144 N.M. 663, 191 P.3d 521, *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783. "If the acts are sufficiently separated, there is no multiple punishment concern, and therefore there is no need to proceed to the next part" of the test regarding legislative intent. *Id.* ¶ 28.

In the instant case, Defendant contends that, other than the restraint which was necessary to commit the CSCM, there was no evidence of restraint to support his conviction for kidnapping. Thus, Defendant argues that the conduct from which his convictions stem was unitary. Defendant asserts that our cases *State v. Crain*, 1997-NMCA-101, ¶ 22, 124 N.M. 84, 946 P.2d 1095, and *State v. Pisio*, 119 N.M. 252, 262, 889 P.2d 860, 870 (Ct. App. 1994), in which we reversed the defendants' convictions for kidnapping and CSP II, control here and, therefore, his conviction for kidnapping must similarly be vacated. We disagree, and for the reasons that follow, we distinguish *Crain* and *Pisio* from Defendant's case.

In *Crain* and *Pisio*, after examining the evidence in the record, we concluded that the charged offenses of kidnapping and CSP II both arose out of the same act of

6

force or physical restraint and, therefore, the conduct underlying each offense was unitary. *Crain*, 1997-NMCA-101, ¶¶ 17, 22; *Pisio*, 119 N.M. at 261, 889 P.2d at 869. In *Crain*, we reasoned that the underlying conduct was unitary where the defendant committed CSP, and the force or restraint used during the act of CSP was the same force or restraint used to prove kidnapping. 1997-NMCA-101, ¶¶ 17, 22. Accordingly, the unitary conduct violated two statutory provisions under which the defendant was charged. *Id.* ¶ 17. Similarly, in *Pisio*, we looked to the state's theory of kidnapping, as well as the time period and proximity in which the conduct underlying both the offenses of kidnapping and CSP II occurred. 119 N.M. at 261, 889 P.2d at 869. There, we determined that the acts used to prove the kidnapping and CSP II occurred within the same physical space and within a few minutes of each other, and thus the conduct was unitary. *Id.* at 261-62, 889 P.2d at 869-70 (holding that "the constitutional protection against double jeopardy precludes multiple punishment for both the greater offense of CSP II, felony, and . . . kidnapping, when the conduct is unitary"). Because we concluded that the conduct in both those cases was unitary, we then continued with our analysis to determine whether the Legislature intended to impose multiple punishments. *Crain*, 1997-NMCA-101, ¶ 18; *Pisio*, 119 N.M. at 261, 889 P.2d at 869.

Unlike *Crain* and *Pisio*, in this case, the underlying conduct was not unitary. Based on the elements of kidnapping that the State was required to prove, the State's theory on which it asked the jury to find Defendant guilty of kidnapping, and the evidence presented to support the jury's finding, we conclude that the jury could have reasonably found that the conduct underlying Defendant's conviction for kidnapping was separate and distinct from the commission of CSCM. *See Saiz*, 2008-NMSC-048, ¶ 30 (stating that the proper double jeopardy analysis is whether a jury could have reasonably inferred independent factual bases for the charged offenses). Here, the district court instructed the jury that in order to find Defendant guilty of kidnapping, the State was required to prove each of the following elements of the crime beyond a reasonable doubt:

> 1. [D]efendant took or restrained or confined or transported [Victim] by force, intimidation[,] or deception;
> 2. [D]efendant intended to hold [Victim] against [Victim]'s will to inflict death, physical injury[,] or a sexual offense on [Victim];
> 3. This happened in New Mexico on or between the 10th day of July, 2007 and the 16th day of July, 2007.

*See* UJI 14-403 NMRA. In addition, the jury was separately instructed that if it found Defendant guilty of kidnapping, it then had to determine whether a sexual offense had been committed against Victim.

In order to determine whether Defendant's conviction for kidnapping was based on restraint for the sole purpose of committing CSCM, we consider what the jury

8

could reasonably have found under the facts of this case. *See Montoya*, 2011-NMCA-074, ¶ 39 (concluding that the defendant's conviction for kidnapping violated double jeopardy where the state's presentation and the jury instructions supported either theory leaving this Court unable to determine from the record on which restraint the jury based its finding of kidnapping). Our Supreme Court has explained that "the key to finding the restraint element in kidnapping, separate from that involved in criminal sexual penetration [or CSCM], is to determine the point at which the physical association between the defendant and the victim was no longer voluntary." *State v. Jacobs*, 2000-NMSC-026, ¶ 24, 129 N.M. 448, 10 P.3d 127; *accord State v. Allen*, 2000-NMSC-002, ¶ 64; *Pisio*, 119 N.M. at 260, 889 P.2d at 868. We recognize that "[a] kidnapping can occur when an association begins voluntarily but the defendant's actual purpose is other than the reason the victim voluntarily associated with the defendant." *Jacobs*, 2000-NMSC-026, ¶ 24; *State v. Laguna*, 1999-NMCA-152, ¶ 13, 128 N.M. 345, 992 P.2d 896. Generally, such cases involve the element of deception. *Jacobs*, 2000-NMSC-026, ¶ 25. "Deception" as employed in our kidnapping statute "necessarily implies that the victim be unaware that [he or] she was being kidnapped" and "embodies either affirmative acts intended to delude a victim or omissions that conceal the intent and purpose of an accused." *State v. Garcia*, 100 N.M. 120, 124, 666 P.2d 1267, 1271 (Ct. App. 1983). "Because an individual's intent is seldom

subject to proof by direct evidence, intent may be proved by circumstantial evidence." *Allen*, 2000-NMSC-002, ¶ 65 (internal quotation marks and citation omitted); *State v. Gallegos*, 2011-NMSC-027, ¶ 16, 149 N.M. 704, 254 P.3d 655. The evidence and acts committed at a later point in a kidnapping may provide adequate support for the jury to find that a defendant intended to hold the victim to commit a sexual offense upon him or her, prior to actually committing that offense. *Allen*, 2000-NMSC-002, ¶ 65.

For example, in *State v. McGuire*, where the defendant was convicted of both kidnapping and CSP II, the evidence showed that the defendant first pushed the victim into the backseat of her car, restraining her there, and later raped her. 110 N.M. 304, 306-07, 795 P.2d 996, 998-99 (1990). There, our Supreme Court reasoned that "the operative fact to be inferred from the sexual assault as it related to the kidnapping charge was the intent of [the] defendant when his victim first was subjected to restraint." *Id.* at 309, 795 P.2d at 1001. The Court held that the defendant's convictions did not arise out of unitary conduct because the jury could infer that the defendant intended to commit CSP from the time he first restrained the victim, and once he had restrained her, the crime of kidnapping was complete, though continuing through the course of his other crimes. *Id.* Therefore, there was substantial evidence presented for the jury to find an independent factual bases for each guilty verdict. *Id.*

Here, the State consistently presented its theory of kidnapping in its opening and closing statements:

> [Defendant] is charged with kidnapping for transporting her for the purpose of committing a sexual offense upon her. Kidnapping [does not] mean that you have to go on a high-speed chase away from police, and they are chasing you, and you are kidnapping them. Look at the way [it is] defined: If you keep them for sexual purposes . . . Daddy was picking her up. They were going to Daddy's house. But you know what? He did something along the way[.]

We understand the State's argument to be that Victim went with Defendant willingly because she was unaware that he intended to commit a sexual offense on her. *See Garcia*, 100 N.M. at 124, 666 P.2d at 1271 (stating that in a kidnapping by deception if the deceit is successful "the induced travel from one place to another will usually appear consensual" (internal quotation marks and citation omitted)). On appeal, the State contends that at the point Defendant put Victim in the car and drove away from the aunt's house, the kidnapping was complete, though continuing. The State asserts that the jury could reasonably infer that the kidnapping was complete at that time from the evidence that Defendant drove to a location other than his stated destination where he committed the sexual offense on Victim. We agree.

Defendant correctly notes that our courts have reversed kidnapping convictions on double jeopardy grounds where there is no evidence that the force or restraint used to support the kidnapping charge was factually distinct from that used to perpetrate

the sexual offense. However, we have rejected the proposition that kidnapping is indistinguishable from the sex offense when there is evidence that the perpetrator abducted the victim prior to attempting the sexual contact. *Allen*, 2000-NMSC-002, ¶ 67; *Crain*, 1997-NMCA-101, ¶ 21 (clarifying that "kidnapping cannot be charged out of every CSP III without some force, restraint, or deception occurring either before or after the sexual penetration"). Here, we disagree with Defendant's contention that the evidence of restraint used to kidnap Victim was the same restraint necessary to touch or apply force to her unclothed buttocks in the commission of CSCM. *See Jacobs*, 2000-NMSC-026, ¶¶ 25-26 (disagreeing with the defendant's assertion that the same restraint used to kidnap the victim was necessarily the same as that used for attempted CSP when the facts in the record supporting a finding that the crime of kidnapping was complete though continuing before the act of CSP began). We conclude that Defendant's argument that there was no evidence of restraint other than that used to actually commit the CSCM rests on a too narrow view of the evidence presented.

Based on the evidence presented at trial—that Defendant alone picked up Victim, that she got in his car and while they were driving home, Defendant pulled the car over to the side of the road, there were no buildings around, they were out in the open, and no cars went by—and the State's theory of the case, we hold that the jury

12

could have reasonably found that the crime of kidnapping was complete, though continuing, prior to Defendant's commission of CSCM on Victim. Specifically, when Defendant drove to a location other than his stated destination and committed a sexual offense on Victim, the jury could have reasonably inferred that Defendant kidnapped Victim by deception when he picked her up from her aunt's house with an intent other than taking her directly home. *See id.* ¶ 25 ("The jury could have found that [the d]efendant kidnapped the victim by deception when he initially offered her a ride home from the mall with another intent in mind."); *McGuire* 110 N.M. at 309, 795 P.2d 1001 (holding that the jury could infer that the defendant had the requisite intent at the time of the initial restraint from evidence of the sex offense committed later in the kidnapping). The jury could also have found that Victim was restrained by deception when Defendant altered their route home and drove to the location where he committed the sexual offense on her. *Jacobs*, 2000-NMSC-026, ¶ 25 (concluding that the jury could have reasonably found the defendant restrained the victim by deception when he changed their intended destination and drove to where she was eventually killed); *Allen*, 2000-NMSC-002, ¶ 68 (concluding that kidnapping was factually distinct from attempted CSP where the jury could have found that the defendant restrained the victim in his vehicle when he drove away from their stated destination and towards the area where he committed attempted CSP and murdered

13

her). We conclude there was sufficient evidence of restraint by deception prior to Defendant's commission of CSCM.

As we have discussed above, based on the State's theory of kidnapping and the evidence in the record that supports it, the jury could reasonably find a separate factual basis for each guilty verdict. Therefore, we hold that, unlike *Crain* and *Pisio,* the conduct underlying Defendant's convictions here was not unitary. Because Defendant's convictions do not stem from unitary conduct, the protection against double jeopardy is inapplicable, and thus our analysis is at an end. *See Montoya*, 2011-NMCA-074, ¶ 34 (holding that when "the conduct is not unitary . . . the evaluation of this crime ends"); *Allen*, 2000-NMSC-002, ¶ 70.

**Sufficiency of the Evidence**

Defendant also asserts that because there was no evidence of restraint beyond that necessary to commit CSCM, there was insufficient evidence presented to the jury to support his conviction for kidnapping. In reviewing the sufficiency of the evidence in a criminal case, "we first view the evidence in the light most favorable to the state, resolving all conflicts and indulging all permissible inferences in favor of the verdict." *Gallegos*, 2011-NMSC-027, ¶ 15 (alterations, internal quotation marks, and citations omitted). Then "we must determine whether substantial evidence, either direct or circumstantial, exists to support a verdict of guilty beyond a reasonable doubt for

every element essential to a conviction." *Jacobs*, 2000-NMSC-026, ¶ 22; *Gallegos*, 2011-NMSC-027, ¶ 15.  Appellate courts "do not search for inferences supporting a contrary verdict or re-weigh the evidence." *State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285.  We recognize that the jury's fundamental role is that of fact finder and that it is the "responsibility of the courts to ensure the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." *Gallegos*, 2011-NMSC-027, ¶ 15.

As we have noted above, based on the evidence presented at trial, the jury could have found that Defendant was guilty of kidnapping beyond a reasonable doubt. *See State v. Fry*, 2006-NMSC-001, ¶ 29-30, 138 N.M. 700, 126 P.3d 516 (holding that the evidence was sufficient to uphold the defendant's conviction for kidnapping).

To the extent Defendant asserts that the jury could not have found evidence of kidnapping prior to the commission of the sexual offense against Victim because she was in parental custody, we disagree.  Defendant cites *Wilborn v. Superior Court of Humboldt County*, 337 P.2d 65 (Cal. 1959) (In Bank), as support for this proposition. In *Wilborn*, the petitioner sought a writ of prohibition from the court after being charged with "child-stealing." *Id.* at 65.  A child-stealer was defined as a "person who maliciously, forcibly, or fraudulently takes or entices away any minor child with intent to detain and conceal such child from its parent, guardian, or other person having the

lawful charge of such child[.]" *Id.* at 66 (internal quotation marks and citation omitted). *Wilborn* is not applicable or persuasive here because the elements and purpose of the California statute are distinct and have a different purpose from the requirements of our kidnapping statute. *See id.*; § 30-4-1(A); *see also State v. Gamlen*, 2009-NMCA-073, ¶ 15, 146 N.M. 668, 213 P.3d 818 ("It is well established that cases are not authority for propositions not considered."). Defendant does not point us to any New Mexico cases that provide a parental exception to kidnapping, nor has the Legislature expressly provided for one. *See* § 30-4-1. The jury was therefore able to fairly consider at what point while Victim was in Defendant's parental custody that Defendant's conduct became unlawful so as to support his conviction for kidnapping.

To the extent Defendant argues that this Court should adopt a judicial test for determining whether confinement or movement can give rise to a kidnapping conviction where another offense has also occurred and to limit the circumstances in which kidnapping may be charged when another offense is also charged, we decline to do so. Defendant's conviction for kidnapping rests on facts that are adequately distinct from those supporting Defendant's conviction for CSCM, and the Legislature and our precedent provide us with sufficient direction to make this determination.

**CONCLUSION**

For the reasons set forth above, we affirm Defendant's conviction for kidnapping.

**IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**I CONCUR:**

_____
**J. MILES HANISEE, Judge**

**MICHAEL E. VIGIL, Judge (dissenting).**

**VIGIL, Judge (dissenting).**

The effect of the Majority Opinion is that whenever a parent with legal care, custody, and control of his child commits a sexual offense upon the child, an irrebuttable presumption is created as a matter of law that the child was taken, restrained, or confined by deception. The consequence is that the parent is thereby rendered guilty of not only the sexual offense, but also the first degree felony of kidnapping. I respectfully submit that the irrebuttable presumption violates due process, and that under the circumstances, a child six years of age is not deceived, as a matter of law. Since the majority disagrees, I dissent.

By virtue of the elements instruction submitted to the jury, Defendant was convicted of first degree kidnapping, contrary to Section 30-4-1(A)(4). The instruction states:

> For you to find the defendant guilty of kidnapping as charged in Count 2, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant took or restrained or confined or transported [Child] by force, intimidation or deception;
>
> 2. The defendant intended to hold [Child] against [Child's] will to inflict death, physical injury or a sexual offense on [Child];
>
> 3. This happened in New Mexico on or between the 10th day of July, 2007 and the 16th day of July, 2007.

18

The majority correctly notes that in *Crain* and *Pisio* the same act of force or physical restraint was used to commit the kidnapping and CSP offenses, and therefore, double jeopardy prohibited a conviction and punishment for both offenses. Majority Opinion, pp. 6-7.  In order to avoid the result of these cases, the majority focuses on whether the restraint to commit kidnapping was accomplished other than by means of force or physical restraint.  Majority Opinion, pp. 7-8.

Using *Jacobs* as its guide, the majority notes that the point at which a physical association between a defendant and a victim is no longer voluntary constitutes a restraint for kidnapping that is separate from a restraint to commit CSCM.  Majority Opinion pp. 8-10.  This is a valid statement for an adult—or even a teenager.  However, the case before us presents us with a father who had legal care, custody, and control of his six-year-old daughter.  The Opinion fails to address whether such a child is legally capable of withholding consent to associate with her father or to prescribe the conditions under which she will associate with her father.  In fact, the Opinion *assumes* such a child is legally capable of making such decisions.  Continuing, the Opinion then focuses on the element of *deception* as a basis for concluding that a victim's consent to associate with a defendant can be involuntary.  Majority Opinion, pp. 9-10.  Again, the six-year-old child in this case had no legal

19

basis, whether she was deceived or not, for withholding consent to go with her father for the weekend.

The majority accepts the State's argument that "Victim went with Defendant willingly because she was unaware that he intended to commit a sexual offense on her." Majority Opinion, p. 11. The majority then makes an analytical jump and concludes that the child was *deceived* the moment Defendant picked her up and drove to a location other than his home, and the kidnapping offense was complete. The majority therefore concludes kidnapping by deception was perpetrated, and double jeopardy does not prohibit a conviction and sentence for both kidnapping and CSCM because deception is not an element of CSCM.

No evidence was presented at trial that the child was deceived about being taken to any specific destination. She was simply being picked up by her father to spend the weekend with him, *wherever* he chose to spend the weekend. Furthermore, the majority assumes, without any evidence, that the six-year-old child in this case was deceived about her destination because she was not taken directly to her father's house. I respectfully submit that a child this age cannot withhold or condition her consent to going with her parent.

The cases relied upon by the majority to support its conclusion are distinguishable. The majority relies on *Garcia* to support its conclusion that substantial evidence supports an inference that the child in this case was deceived. Majority Opinion p. 11. In *Garcia*, an eighteen-year-old stranger was boxing with a friend in the yard of the apartments where the three-year-old victim lived. 100 N.M. at 122, 666 P.2d at 1269. He gave the victim a ride on his shoulders, whereupon he took her toward an arroyo near the apartments, and committed CSP. *Id*. at 124, 666 P.2d at 1271. This case is clearly distinguishable. Defendant was not a stranger, but a father who clearly had legal care, custody, and control of his child. Building on *Garcia*, the majority then cites to *McGuire* for its conclusion that the kidnapping in this case was complete when Defendant drove away from the aunt's house with his child. Majority Opinion, pp. 10-11. *McGuire* involved the kidnapping of an *adult* victim, and the facts were as follows:

> Defendant, according to Martin's testimony, walked up to [the victim] as she was sitting in her car outside the apartments and forced his way into the car. He pulled [the victim] from the front seat, slapped her, and forced her into the back. Defendant, Martin testified, then climbed in on top of his victim and told his brother to drive. As they proceeded East on I-40, defendant bound [the victim's] hands and feet and gagged her mouth with duct tape. He then raped her.

21

110 N.M. at 307, 795 P.2d at 999. Thus, our Supreme Court concluded, "Once [the] defendant restrained the victim with the requisite intent to hold her for service against her will, he had committed the crime of kidnapping[.]" *Id*. at 309, 795 P.2d at 1001. In my view, *McGuire* is not applicable to the facts before us in this case.

The majority refers to the State's rebuttal closing argument, Majority Opinion, p. 11, to assert that the State's theory was that the child was kidnapped by deception. The argument without the deletions was:

> Ladies and gentlemen, the evidence shows that this man did this. This man put his penis in his daughter's butt. He kept her there. Kidnapping doesn't mean that you have to go on a high-speed chase away from police, and they are chasing you, and you are kidnapping them. Look at the way it's defined: **If you keep them for sexual purposes**. This little girl trusted him. Of course, she went with him willingly. Daddy was picking her up. They were going to Daddy's house. But you know what? He did something along the way that she will never forget. She was six years old. She has got a lot of living to do, and she will never forget that.

(Emphasis added.) Rather than a theory of deception, the argument points to a theory of "keeping" the child by force or physical restraint.

Under the majority's reasoning stated in the opinion, Majority Opinion, p. 11; pp. 12-14, even if Defendant drove his child home and committed CSCM, he would have kidnapped her by deception because she was not going to the house to have CSCM perpetrated upon her. This reasoning results in an impermissible, irrebuttable

22

presumption of deceit, an essential element of kidnapping. *See State v. Jones*, 88 N.M.110, 112, 537 P.2d 1006, 1008 (Ct. App. 1975). Thus, every time a parent has committed CSCM on his or her six-year-old child, the parent will have also separately committed kidnapping by deception, because it is irrebuttably presumed that the child did not consent to the CSCM. Furthermore, double jeopardy is not violated by a conviction and sentence of both crimes.

No New Mexico precedent exists for the result reached by the majority in this case, and I am unaware of any precedent from any other state which does. Unlike the majority, I do not agree that the evidence supports a legal conclusion that the child was actually deceived into going with Defendant, her father, and I am unwilling to presume she was deceived as a matter of law. In my view, the same act of force or physical restraint was used to commit the kidnapping and CSCM offense, and double jeopardy prohibits a conviction for both offenses. Since the majority disagrees, I dissent.

_____

**MICHAEL E. VIGIL, Judge**

23